# EXHIBIT 1



**Vestal Design
Atelier LLC**

**Product Development
Agreement**

1503 Spruce St.
Unit B
Boulder, CO 80304
**T** +1 650 283 2896
**F** +1 866 291 1855
mikef@vestaldesign.com
www.vestaldesign.com

Attention:

Chris Haughey

Tegu Toyworks
2668 Granville Avenue
Los Angeles, CA  90064
+1.310.800.6350
chris@tegutoys.com

This Agreement is entered into this 20th day of November, 2007 by and between Vestal Design, LLC, 1503 Spruce St., Unit B, Boulder, CO 80304, ("Contractor"), and Tegu Toyworks (Chris Haughey), 2668 Granville Ave, Los Angeles, CA 90064 ("Client")

Client desires to retain Contractor to render design and consulting services for Client per this Agreement and the Contractor desires to be retained by Client on such terms and conditions.

Client and Contractor agree as follows:

## Deliverables

| Item | Est. Hours | Timeline |
|---|---|---|
| **Initial Design Exploration and Research**<br>Graphic + CAD design of first customizable toy type (truck) – for use in website demo and for prototype quoting purposes<br>- First draft designs for toy supplied by Tegu Toyworks<br>- Refined designs for toy to be supplied by product designers<br>    * Preliminary toy benchmarking<br>    * Need finding and in-the-field user observation (eg. Bing Nursery and The Nueva School.)<br>    * Design sketches and concept drawings<br>    * Test and Iterate | 50 hrs | Nov 26 - Dec 7 |
| **Physical Prototyping**<br>Finished wooden prototype of toy truck parts – able to be modularly assembled into a custom truck<br>    * Design rapidly implemented in inexpensive soft woods<br>    * Experiment with material, process, and finish (paint, stains, oils and waxes)<br>    * Final design execution in Honduran hardwoods, provided by Tegu Toyworks. | 40 hrs | Dec 10 - Dec 14 |



Vestal Design
Atelier LLC

Product Development
Agreement

1503 Spruce St.
Unit B
Boulder, CO 80304
**T** +1 650 283 2896
**F** +1 866 291 1855
mikef@vestaldesign.com
www.vestaldesign.com

**Materials Budget**
Maximum of $500 for benchmarking competitors toys, prototyping materials and finishes
(paint, stains, oils and waxes).

**Compensation**
The Client agrees to pay $7200 for 90 Hours of work performed (Total Hours Estimate)
towards the completion of Deliverables.

Payment will occur in two parts, $3600 up front and $3600, plus reimbursement, upon
completion of the project. The first invoice will be due immediately following the signing of the
contract, and the second and final invoice date will be upon completion of the project.

# Terms and Conditions

### 1.0 Confidential Information.

1.  Confidential information of any nature that either party (the Recipient) acquires regarding
    any aspect of the other party's business (the Discloser) will be treated in strict
    confidence, provided it is marked "confidential" or "proprietary" by the Discloser, or if
    orally or visually disclosed, is promptly confirmed as such in writing to Recipient
    ("Confidential Information"). Confidential Information so obtained by the Recipient will not
    be divulged to third parties without the written permission of the Discloser. This
    Agreement imposes no obligation upon the Recipient with respect to Confidential
    Information if the Recipient can establish the Confidential Information: (i) was in the
    Recipient's possession before receipt from the Discloser and was not subject to an
    obligation of confidentiality; or (ii) is or becomes available to the public through no fault of
    the Recipient; or (iii) is received in good faith by the Recipient from a third party and is
    not subject to an obligation of confidentiality owed to or by the third party; (iv) is
    independently developed by the Recipient without reference to the Confidential
    Information received hereunder, or (v) is required to be disclosed by court or
    governmental order, provided the Discloser is given prior notice of the required
    disclosure and Discloser has an opportunity to seek a protective order regarding
    disclosure pursuant to a court or governmental order. Both parties retain the right to do
    business with third parties in matters that may be competitive with interests of the other
    party to this Agreement. However, the confidentiality constraints above will be binding
    and have precedence over these business matters. Upon termination or expiration of
    this Agreement, the terms of this paragraph will remain in effect for 3 years.



Vestal Design
Atelier LLC

Product Development
Agreement

1503 Spruce St.
Unit B
Boulder, CO 80304
**T** +1 650 283 2896
**F** +1 866 291 1855
mikef@vestaldesign.com
www.vestaldesign.com

**2.0 Ownership of Intellectual Property.**

1.  Ownership. Intellectual property rights of each party will be governed by the following: For the purpose of this contract, any work product or new invention related to or arising from the Services provided hereunder, including all intellectual property rights created, invented or authored by Contractor in connection with the Services, will be the exclusive property of the Client. The Client will own all right, title and interest in such work product or new invention, except as stipulated in in item 4 below. Contractor hereby assigns all such right, title and ownership to Client.

2.  Contractor shall retain all right, title and interest in any pre-existing work product or invention provided hereunder in connection with the Services, including all pre-existing intellectual property rights created, invented or authored by Contractor and used in connection with the Services. Subject to the terms and conditions of this Agreement, Contractor grants Client a free, non-exclusive license to Contractor's pre-existing intellectual property rights used by Contractor in connection with the Services, but solely for use by Client in connection with hardware, firmware and software delivered by Contractor pursuant to the Services.

3.  All graphics developed by the Contractor, which are not-preexisting, shall be owned in their entirety by the Client.

4.  For any work product, invention and/or intellectual property generated under this Agreement that Contractor and Client mutually agree may be patented under a utility (non-aesthetic) patent, Contractor shall own at least 50% of any utility patent generated from the Contractor's research and design. In addition, Contractor will be granted by Client a fair and agreeable share in revenue generated by commercialization. A separate agreement shall be established in writing, which specifies the precise nature of Contractor's and Client's ownership of Intellectual Property rights and share in revenue generated from the commercialization of the invention or Intellectual Property at a time no later than the filing date of the patent application (provisional or full application).

5.  All work product and intellectual property characterized as innovative software, design and graphics developed in order to provide services contracted by Client which can be proven by Client to be unique and critical to the competitive advantage and those methods and designs which enable Client to avoid direct competition, and is not governed by an existing license, is owned in full by the Client. If Client intends to sell the work product, whether directly or through a third party, or any component or derivation, it must inform Contractor of this intent before work is begun, at which point Contractor is permitted to refuse to perform the work, to negotiate a separate contract for the work and/or to terminate the present Agreement with no obligations surviving as against



Vestal Design
Atelier LLC

**Product Development Agreement**

1503 Spruce St.
Unit B
Boulder, CO 80304
**T** +1 650 283 2896
**F** +1 866 291 1855
mikef@vestaldesign.com
www.vestaldesign.com

Contractor. If the Client exercises any of these rights, it agrees to assume full responsibility and liability for the work product, to not hold Contractor liable in any circumstance, and to void any warranty, actual or implied, of the software or design.

6.  All software, graphics and design not covered by item 4 and not governed by an existing license, is governed under the following terms:

   6.1.  Contractor grants the client a non-exclusive license to use, copy, modify, merge, publish, distribute, sublicense, and/or sell copies of the work product (software, graphics or product design), and to permit persons to whom the work product is furnished to do so. If Client exercises any of these rights, it agrees to assume full responsibility and liability for the work product, to not hold Contractor liable in any circumstance, and to void any warranty, actual or implied, of the work product. Contractor reserves the right to license and use the work product in the future under these terms or others, in work which will not directly compete with the Client, but wherein such non-competition period does not exceed a maximum of two years.

   6.2.  Verification. Client will be responsible for verifying any property rights of other parties prior to use of any work product provided under this Agreement and shall provide evidence of verification upon the request of Contractor; and Client shall be responsible for any and all consequences of such use.

   6.3.  Indemnity.  Client agrees to hold harmless and indemnify Contractor to the full extent permitted by law from any claim, demand, suit, loss, cost of expense or any damage which may be asserted, claimed or recovered against or from Contractor as the result of actions performed by the Client in the use of or in relation to the work product.

**3.0 Term, Amendment, and Termination of Services.**

1.  Term. Unless terminated at an earlier date in accordance with Section 3(b), this Agreement will commence as the date first written above and will continue for one (1) year and will then expire, unless renewed in writing by the parties under such terms and conditions as they may agree. However, Sections 1 (confidential information), 2 (ownership of intellectual property), and 5 (Miscellaneous) of this Agreement will continue in force after termination or expiration.

2.  Amendment. This Agreement may be amended by either party, however, only under mutual expressed written consent of both parties.



Vestal Design
Atelier LLC

**Product Development
Agreement**

1503 Spruce St.
Unit B
Boulder, CO 80304
**T** +1 650 283 2896
**F** +1 866 291 1855
mikef@vestaldesign.com
www.vestaldesign.com

3. Termination. This Agreement may be terminated without cause by either party, by providing written notice to the other party of the intent to terminate this Agreement two weeks in advance. Contractor will be entitled to receive from Client all fees and expenses incurred up to the date of termination. The Contractor is entitled to full compensation for all deliverables which are considered completed, either by Client or due to terms specified in the Contract. If Client terminates, Contractor is entitled to receive partial compensation for deliverables which were worked upon but not completed. The amount of partial compensation will be determined by Contractor as a fraction of the deliverable's completed value which corresponds to the amount of work performed for the deliverable and the estimated total amount of work needed to complete the deliverable as proven by contractor.

**4.0 Invoicing, Compensation & Work Performed**

1. If an invoice payment is not received by the Contractor by the date specified on the invoice, the Client agrees to pay a fine each week (full or partial) of 10% of the payment amount that the payment is overdue. The payment is no longer considered overdue once the initial payment and all fines are received.

2. The Contractor may also halt work until an overdue payment is received in full. All deadlines will be reassigned to a new date corresponding to the number of days the payment is/was overdue and will not be subject to penalties relating to changed, missed, or overdue deadlines.

3. The Client has 5 business days from the date listed on the invoice to deliver the payment to the Contractor's mailing address listed on this document.

4. The Client will pay the Contractor in-full if the Contractor performs work for the number of hours agreed to in Compensation whether the listed Deliverables have been completed or not.

5. If, upon completing the Total Hours Estimated listed above, Deliverables have not been completed, the Contractor will perform additional Hours of work up to 10% of the Total Hours Estimated to complete Deliverables at no additional charge to the client. These additional Hours are not subject to pre-existing deadline or timeline stipulations.

6. TPS reports ( as defined by IEEE 829 ) are not tolerated and under no circumstances will be created or reviewed by the Contractor.

7. An Hour are defined to be 1 hour ( as defined by ISO-31-1 ) of work performed by any employee or sub-contractor of the Contractor towards completion, QA/QC and research



Vestal Design
Atelier LLC

Product Development
Agreement

1503 Spruce St.
Unit B
Boulder, CO 80304
**T** +1 650 283 2896
**F** +1 866 291 1855
mikef@vestaldesign.com
www.vestaldesign.com

of Deliverables, assistance to Client or administration of the project. In the event of a partial hour of work performed, the Contractor may round up in 15 minute increments.

**5.0 Deadlines**

1.  If the Client does not respond to emails or phone calls from the Contractor within a period of 2 business days (48 hours), the Contractor will proceed, using its best judgement. If the Client later finds fault with the work done while out of contact, the deadline for the deliverables in question will be extended by the time initially spent on that work as well as the time spent correcting the deliverable. Both time spent on the work as well as time spent correcting the work will be included in the monthly calculation of  billable hours. If the Contractor requires an answer to proceed, work will be suspended, and the time lost will be added to the final deadline of a deliverable. The above conditions also apply to deliverables which are considered completed, but later found to need further work for the successful completion of another deliverable. The deadline for the uncompleted deliverable will be extended by the time needed to complete further work on the previously completed deliverable.

2.  After reaching a deadline or the Contractor has delivered an item, the client has 5 business days to provide feedback, after which the deliverable/deadline will be considered completed, delivered, and non-negotiable.

3.  If the Contractor fails to meet an agreed-upon deadline for a deliverable, a missed deadline fine of $50 for each business day the deadline is late. The Client has 5 business days after the deadline has passed to inform the Contractor in writing that they wish to claim the missed deadline fine, after which point the fine may no longer be enforced. This fine does not apply to deadlines in which the action by the Client is necessary and the Client fails to act in a appropriate manner. This may include, but is not limited too, deployment of Software on Client systems, Client registration of Domain Names, and Client furnishing required information or materials to the Contractor.

4.  If a deliverable is found to have not meet specifications at the time of delivery, within two months of being delivered, the Client is entitled have the deliverable fixed at no charge by the Contractor. The Contractor also has the option of refusing to fix the deliverable and instead refunding the Client for the original cost of the deliverable, as agreed upon by both parties. This clause does not apply to deliverables which are modified by the Client after being delivered, or flaws related to security threats discovered after the delivery.



Vestal Design
Atelier LLC

**Product Development
Agreement**

1503 Spruce St.
Unit B
Boulder, CO 80304
**T** +1 650 283 2896
**F** +1 866 291 1855
mikef@vestaldesign.com
www.vestaldesign.com

**6.0 Miscellaneous.**

1.  Entire Agreement. This Agreement (including the exhibits, schedules and other documents) constitutes the entire agreement between the parties. This Agreement supersedes any and all prior agreements, oral or written, between the parties.

2.  If any provision of this Agreement is for any reason declared to be invalid or unenforceable, the validity and enforceability of the remaining provisions will be deemed modified to the extent necessary to render it valid and enforceable, and if no modification will render it valid and enforceable, this Agreement will be construed as if not containing such provision and the rights and obligations of the parties will be construed and enforced accordingly.

3.  Amendment, Waiver, Modification or Termination. No amendment, waiver or termination or modification of this Agreement will be binding unless it is in writing and signed by both Contractor and Client and dated subsequent to the date of this agreement. Performance of work by Contractor and/or acceptance of payment by Contractor for work performed and/or work to be performed for Client beyond the scope of this Agreement does not constitute acceptance by Contractor of amendments or modifications to this Agreement nor will they be binding.

4.  Advertisement and Display of Project and Products.

    4.1.    Contractor agrees not to display and/or advertise any work performed and/or products developed for the Client unless and until Client has granted Contractor written permission to do so.  Once permission is granted by Client, work and products may be displayed or advertised by Contractor at no-charge and without restriction at the Contractor's discretion.

    4.2.    If the Client and Contractor are bound by a non-disclosure agreement, the Contractor may display and/or advertise any work performed and/or products developed for the Client once the Client has publicly disclosed, in part or in whole, the product or services performed.

    4.3.    If the Client and Contractor are bound by a non-disclosure agreement, the Contractor may still state that they are working with the Client, the duration of the project and the general area of expertise under which the work is being performed.

5.  Assignment. This Agreement and the rights and obligations of the parties hereunder will be assignable by either party with prior written notice to the other party.



Vestal Design
Atelier LLC

**Product Development
Agreement**

1503 Spruce St.
Unit B
Boulder, CO 80304
**T** +1 650 283 2896
**F** +1 866 291 1855
mikef@vestaldesign.com
www.vestaldesign.com

6. Marriage. Should two employees from both the Client and the Contractor obtain a marriage license or civil union in any State, the Client will give the couple a gift of one burro (Cypriot, Mammoth or Poitou), which is less than 5 years old. The couple is responsible for all costs to transfer the aforementioned burro from the Client.

7. Successors and Assigns. This Agreement will be binding upon and inure to the benefit of the parties hereto and there respective heirs, personal representatives and, to the extent permitted by subsection (b), successors and assigns of the parties hereto.

8. Limitation of Liability. SUBJECT TO SECTION 1 OF THIS AGREEMENT, NEITHER PARTY SHALL HAVE ANY LIABILITY TO THE OTHER FOR ANY INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES, HOWEVER CAUSED AND ON ANY THEORY OF LIABILITY, ARISING OUT OF OR RELATED TO THIS AGREEMENT, EVEN IF IT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. SUBJECT TO SECTION 1 OF THIS AGREEMENT, NEITHER PARTY'S AGGREGATE LIABILITY ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL EXCEED THE AMOUNTS PAID BY CLIENT TO CONTRACTOR HEREUNDER. THESE LIMITATIONS SHALL APPLY NOTWITHSTANDING ANY FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.

9. Governing Law. This Agreement shall be governed by and construed according to the laws of the state of Colorado, excluding its choice of law provisions.

10. The Contractor will not use any designs or images which they know infringe upon a previously copyrighted work.

**IN WITNESS WHEREOF**, the parties hereto have executed this contract.

VESTAL DESIGN ATELIER, LLC

By: _____

(Printed Name) Michael Lin

(Title) Principal Ecodesign,
    LLC Member & Manager

Dated: Dec 10, 2007

Client: TEGU TOYWORKS

By: _____

(Printed Name) CHRISTOPHER HAUGHEY

(Title) PRESIDENT

Dated: 12 / 11 / 2007